**Donald Eugene DUTTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–91–00658–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 2, 1992.

Stanley C. Kirk, Houston, for appellant.

Carol Cameron, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

### OPINION

ELLIS, Judge.

Appellant, Donald Eugene Dutton, appeals his judgment for conviction of aggravated assault on a police officer. TEX.PENAL CODE ANN. § 22.02 (Vernon 1989). Appellant was charged in a two count indictment for aggravated assault on a peace officer and aggravated kidnapping. The court granted the State's motion to sever the two counts of the indictment and the State proceeded to trial on the first count of aggravated assault on a police officer. The jury rejected appellant's not guilty plea and found him guilty as alleged in the indictment. The State dismissed the first enhancement paragraph. The jury found the remaining second enhancement paragraph to be true and assessed punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice, and assessed a fine of $10,000. We affirm.

On January 5, 1991, Officer Paul Deason saw a car traveling at a high rate of speed run a stop sign at an intersection. The car appeared to be an Oldsmobile or Buick type, four-door family car with wire spokes. Deason turned on his red lights and siren and chased the vehicle. The vehicle turned into a residential driveway and turned off its lights. Deason pulled up behind the car in the driveway and turned on his high beam lights.

Appellant got out of the driver's side of his vehicle and walked toward the house. Deason turned on the spotlight of the car, got out of his car, walked up behind the vehicle and called out to appellant, "Sir, I need to see your driver's license." Appellant then turned around and started walking toward Deason very quickly with both hands behind his back. Deason became suspicious of his hands behind his back and reacted by unsnapping his holster and pulling his service revolver halfway out of the holster. When appellant came within arm's distance, Deason heard a shot and a tremendous force creased the left side of his face. The next thing Deason knew, he was laying face down on the ground. He then heard some footsteps, a car door slam, a car start up and tires rolling over the pavement. Appellant then proceeded to back up the car over Deason. The car completely rolled over Deason and caught him up under the vehicle. Deason was drug under the car and felt excruciating pain toward his head and lower limbs. After being drug underneath the car for approximately 15 seconds, Deason was somehow freed and able to stand up. Deason stumbled a few feet, pulled out his walkie talkie that was on his belt and called for assistance. Deason then fell down on all fours. When he looked up, he saw a black wrecker coming his direction. The wrecker driver told him to lay down, that help was on the way.

Deason was taken to the hospital where he stayed for eight days. He had gunshot wounds on the left side of his face and the lower flank of his back. While in the hospital, he identified appellant in a videotaped lineup as the one who shot him. Some time later, Deason went down to the homicide division and signed a statement regarding the incident. He also identified the vehicle that ran over him at the central police station. At trial, Deason identified appellant in court and stated that he recognized him from the scene of the incident.

In points of error one and two, appellant argues that the State purposefully excluded Cari Valita Barnes, a black venire member, from the jury selected to try him, a white defendant, in violation of the equal protection of the law under the State and Federal constitutions. A prosecutor is prohibited by the fourteenth amendment from striking potential jurors with peremptory strikes solely on the basis of their race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). A prosecutor is required to provide an explanation of his reason for using peremptory strikes against jurors, whenever

the defense in a criminal proceeding can establish a *prima facie* case that the prosecutor in fact made racially motivated strikes against eligible veniremembers. *Linscomb v. State*, 829 S.W.2d 164, at 165 (Tex.Crim.App.1992). To establish a *prima facie* case, the defense must show that "relevant circumstances raise an inference that the prosecutor used ... [the peremptory challenge] practice to exclude ... veniremen from the petit jury on account of their race." *Id.* at 165 (citing *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723). It is not necessary that the defendant be of any identifiable race himself nor need the wrongfully excluded veniremembers be of the same race as he in order that his *Batson* claim be cognizable. *Id.* at 165 n. 6 (citing *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)). Although the Texas Court of Criminal Appeals has made clear that the United States Constitution is offended by even a single strike exercised on the basis of race; the amount of strikes against an identifiable group certainly can be used to establish a *prima facie* case along with other legitimate inferences revealed by the record. *Id.* at 166. Once a prima facie case is made, the burden shifts to the State to come forward with a neutral explanation for challenging the juror in question. *Batson*, 476 U.S. at 96–98, 106 S.Ct. at 1722–24. The prosecutor's explanation need not rise to the level of justifying an exercise of a challenge for cause, but the prosecutor must articulate a neutral explanation related to the particular case to be tried. *Id.* The trial court then has the task of determining if the defendant has established purposeful discrimination. *Id.* The appellate court shall not reverse the trial court's decision unless "the reviewing court is left with a firm conviction that a mistake has been committed." *Harris v. State*, 827 S.W.2d 949, 955 (Tex.Crim.App.1992) (citations omitted).

In the present case, appellant complains of a single strike against Barnes, a black veniremen. Appellant does not complain on appeal of the second strike he contested during pretrial concerning juror no. 28. Before determining if the trial court erred in its ruling as to this single strike, it is important to note that the record is insufficient to support appellant's claim that a *prima facie* case was ever established. The juror cards in the record do not indicate the race of the jury venire members. Specifically, the record fails to affirmatively reflect the race of the venire members challenged for cause, the race of the venire members excused by agreement and the race of the venire members peremptorily challenged by the appellant. The only indication in the record comes from appellant's attorney's statement during trial:

> It's not a Batson issue. I believe as it stands right now—and y'all correct me if I'm wrong—we feel jurors, as seated, there are no black jurors on the jury panel on the jury actually selected. Of the jury panel that we have left in the courtroom, right now, there's seated in the courtroom, 13 blacks on the jury. As to the actuality 48—I believe there's 11 blacks on the panel themselves that are sitting out there right now but it would take me a second to figure out how many of them are struck for cause.

This statement fails to give this court the opportunity to determine the relevant facts necessary to assess appellant's claim. There were a total of one hundred fourteen venire members. The trial court granted challenge for cause with respect to fifteen venire members and excused one venire member by agreement of both the State and appellant. The State peremptorily challenged nine venire members and appellant peremptorily challenged ten venire members. It is appellant's burden to present a sufficient record to show error requiring reversal. TEX.R.APP.P. 50(d). We see nothing regarding the statistical evidence available or other circumstances in the record to establish a *prima facie* case.

Further, appellant presents no evidence of circumstances, either by stipulation or otherwise, to support an inference that the prosecutor's strike was racially motivated. *See Price v. State*, 726 S.W.2d 611, 613 (Tex.App.—Houston [14th Dist.] 1987, no pet). Appellant's argument con-

centrates solely on the prosecutor's reasons for striking Barnes, a black juror. He attempts to negate the prosecutor's reasons by looking at the similar qualities in jurors that were not struck. This does not address the prima facie case that needs to first be established. Finding that the record does not support a finding that a *prima facie* case was established, appellant's *Batson* claim fails.

Nevertheless, even if a *prima facie* case was established, we do not find error in the trial court's determination that the State's challenges were not racially motivated. At the pretrial *Batson* hearing, the State gave the following reason for striking venire number twelve:

Juror No. 12, (Ms. Barnes), I did speak to her briefly.

She looked extremely timid and she appears to be of the Pentecostal religion. She did not indicate on her jury information form whether or not she had ever been criminal jury service, whereas she filled out every other blank. She is a very young person. She is not married and she shows no particular experience in work and she's only worked as an accountant for Enron for four months.

Those were the only reasons we struck her, not because she was black. In fact, I would prefer to put some minorities on this jury. The only other minority that came up that was not subject to cause or had not given us any other grounds to strike him was a Hispanic individual, who is on the jury.

We find that the State's explanations were racially neutral. Barnes' failure to complete the jury information questionnaire constitutes a race-neutral reason for the State's peremptory challenge. *See York v. State*, 764 S.W.2d 328, 331 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd); *Chandler v. State*, 744 S.W.2d 341, 343 (Tex.App.—Austin 1988, no pet.) (failed to fill out juror information card); *Townsend v. State*, 730 S.W.2d 24, 26 (Tex.App.— Texarkana 1987, no pet.) (indefinite answer on the personal data form). Barnes' lack of work experience constituted a race-neutral reason for the State's peremptory chal-

lenge. *Townsend*, 730 S.W.2d at 26 (venire member had a short term of employment). Barnes' young age constituted a race-neutral reason for the State's peremptory challenge. *See Hernandez v. State*, 808 S.W.2d 536, 544 (Tex.App.—Waco 1991, no pet.) (young venire member); *Townsend*, 730 S.W.2d at 26 (young venire member). Barnes' timidity constituted a race-neutral reason for the State's peremptory challenge. Furthermore, Barnes answered in the affirmative when asked whether she or a close friend had been arrested. *See Davis v. State*, 822 S.W.2d 207, 211–212 (Tex.App.—Dallas 1991, pet. ref'd) (venire member's father had been convicted or charged with tax evasion); *Munson v. State*, 774 S.W.2d 778, 779–780 (Tex.App.— El Paso 1989, no pet.) (Venire member's close friend had been sent to the penitentiary for receiving stolen property and had served as a witness in a court martial for murder); *Perry v. State*, 770 S.W.2d 950, 952 (Tex.App.—Fort Worth 1989, no pet.) (venire member had been charged with, but not prosecuted for, attempted rape and another venire member's brother had been arrested); *Wilson v. State*, 769 S.W.2d 682, 683 (Tex.App.—Beaumont 1989, no pet.) (venire member's family member had been convicted of robbery).

Appellant has shown us nothing in the record indicating that the prosecutor's reasons were pretexts for intentional discrimination. Merely because other jurors not struck had one or slightly similar characteristics to Barnes, such as the way they filled out their questionnaire or their type employment, does not provide this court with evidence that these were not racially neutral explanations as to Barnes. We conclude that the trial court's ruling is supported by the record and is, therefore, not clearly erroneous. Appellant's points of error one and two are overruled.

Appellant argues in his third point of error that the trial court erred in overruling his objections to the introduction of a pen packet, because it reflected two offenses of aggravated rape in one indictment. During the punishment phase, the state introduced a pen packet that showed

appellant had been convicted in cause no. 313689 in the 263rd District Court of Harris County for two offenses of aggravated rape which were committed in 1980. Appellant objected to the introduction of this evidence because the indictment alleged two separate offenses of aggravated rape in one indictment which were not property crimes. Appellant argues based on section 3.01 of the Penal Code and article 21.24(a) of the Code of Criminal Procedure in effect at the time of the commission and conviction of these crimes that these separate offenses were misjoined because they did not arise out of the same criminal episode. See TEX.CODE CRIM.PROC.ANN. art. 21.24(a) (Vernon 1989) and TEX.PENAL CODE ANN. § 3.01 (Vernon 1974).

Even if there is merit to appellant's argument, it is impossible for this court to review appellant's claim because appellant did not provide a sufficient record. The appellant has failed to include in the appellate record the indictment(s) in Cause No. 313689. It cannot be determined, therefore, whether the grand jury returned two separate indictments under a single cause number, one indictment alleged Count I and the other indictment alleged Count II, or whether the grand jury returned a single indictment which alleged both Counts I and II. The appellant, having failed to include in the appellate record the indictment(s) for Cause No. 313689, has failed to present a sufficient record establishing a defect in the judgments and sentences in Cause No. 313689 and therefore cannot now complain on appeal of any alleged misjoinder. *Valdez v. State*, 826 S.W.2d 778 (Tex.App.—Houston [14th Dist.] March 12, 1992, no pet.); *Preston v. State*, 667 S.W.2d 331, 334 (Tex.App.—Corpus Christi 1984, no pet.).

■ Also, the appellant has failed to bring forth the statement of facts from cause no. 313689. Even assuming, arguendo, Counts I and II were joined in a single indictment, there is no evidence appellant did not waive any alleged error with respect to joinder of such counts. It is well established in our jurisprudence that an accused cannot invite error and then complain thereof. *Tucker v. State*, 771 S.W.2d 523, 534 (Tex.Crim.App.1988), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 578 (1989). At the hearing on the entry of appellant's pleas of guilty to both Counts I and II in Cause No. 313689, appellant could very well have expressly voluntarily and knowingly waived any alleged error with respect to joinder of Counts I and II in a single indictment. Appellant, having failed to include in the appellate record the statement of facts for Cause No. 313689, has further failed to preserve any contentions concerning any alleged misjoinder. Appellant's point of error three is overruled.

■ Appellant argues in his fourth point or error that he has been denied a complete statement of facts and transcript on appeal. Specifically, appellant contends that State's Exhibit 6 is not contained in the record so as to enable appellant to determine its admissibility and harm. We note that the court during trial substituted State's Exhibit 6A, a duplicate copy, for State's Exhibit 6. State's Exhibit 6A is an audio tape recording of Deason's walkie talkie transmission to Officer Frank Cempa, a police dispatcher, after Deason was shot and run over. This court directed the district clerk to supplement the record with State's Exhibit 6A pursuant to TEX. R.APP.P. 55(b). State's Exhibit 6A is now part of the record before this court, therefore, appellant's complaint is moot. Point of error four is overruled.

■ Appellant argues in his fifth point of error that the State made an improper jury argument by telling the jury that it could speculate on evidence that was not in the record. It is well settled that permissible jury argument must fall within four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231–232 (Tex.Crim.App.1973). Counsel may on argument draw from the facts in evidence all inferences that are reasonable, fair, and legitimate and he will be afforded great latitude without limitation in this respect so long as his argument

is supported by the evidence and offered in good faith. *Griffin v. State*, 554 S.W.2d 688, 690 (Tex.Crim.App.1977). The prosecutor's arguments fell within the permissible bounds of jury argument as a reasonable deduction from the evidence.

 The penitentiary packet reflects that appellant, in *The State of Texas v. Donald Eugene Dutton*, Cause No. 486303, in the 351st District Court of Harris County, Texas, was sentenced on June 23, 1988 for the felony offense of aggravated sexual assault and previously had been convicted of a felony offense. His punishment was confinement in the Texas Department of Corrections for life and assessed a fine in the amount of $1,000.00. Then, on January 5, 1991, less than two-and-a-half-years after his conviction for aggravated sexual assault, appellant committed the instant aggravated assault on Officer Deason.

During the prosecutor's closing argument to the jury at the punishment stage, the following occurred:

[STATE'S ATTORNEY]: Now, he didn't stay in prison for 20 years because we know from looking at the penitentiary and the last conviction, that on August 13th, 1987, he was convicted of aggravated sexual assault, which is the name aggravated rape has now been changed to under our statute, aggravated sexual assault by using a knife. He was convicted of that offense on June 23rd, 1988, where he was represented in the trial by Jim Leitner and given a life sentence, a life sentence and $10,000.

Now, it doesn't take a PhD to figure out that if you get a life sentence in 1988 and he is here in Houston, Texas, on January 5th, 1991, he did not serve out that entire life sentence. You may reasonably deduce from the evidence what happened. You may reasonably deduce—

[DEFENSE ATTORNEY]: Object to that, Your Honor, as asking this jury to speculate to matters not before them, not in evidence in this case.

[THE COURT]: Sustained.

[DEFENSE ATTORNEY]: Ask the jury to disregard that for all purposes.

[THE COURT]: The jury will disregard the last comment of the prosecutor for all purposes whatsoever.

[DEFENSE ATTORNEY]: Move a mistrial, Your Honor.

[THE COURT]: That will be denied.

[STATE'S ATTORNEY]: You may use your common sense and make reasonable deductions from the evidence from all the evidence which has been brought to you in this case, all the evidence, which includes this penitentiary packet and I ask you to look at that.

We find that the prosecutor did not ask the jury to determine appellant's punishment based on collateral matters which were improperly interjected by way of his jury argument. Nor did the prosecutor tell the jury to speculate on evidence not in the record. Rather, the prosecutor simply suggested the jury make a reasonable deduction from the evidence. Counsel may on argument draw from the facts in evidence all inferences that are reasonable, fair, and legitimate and he will be afforded great latitude without limitation in this respect so long as his argument is supported by the evidence and offered in good faith. *Griffin v. State*, 554 S.W.2d 688, 690 (Tex.Crim. App.1977).

 Further, any injury from improper argument is ordinarily obviated when the court instructs the jury to disregard the argument, unless the remarks are so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonition. *Andujo v. State*, 755 S.W.2d 138, 144 (Tex.Crim.App.1988); *see Bell v. State*, 724 S.W.2d 780, 803 (Tex.Crim.App. 1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). The trial court instructed the jury to disregard the prosecutor's comment. Moreover, there is no evidence that the jury engaged in speculation or conjecture. The prosecutor's remark, even if error, was cured by the trial court's instruction to disregard and therefore made no contribution to the appellant's punishment. The appellant's fifth point of error is overruled.

■■ Appellant argues in his sixth point of error that the trial court erred in cumulating appellant's conviction with a prior conviction after the court had sentenced appellant and took under advisement the State's Motion to Cumulate the appellant's sentence. In the discretion of the court, the judgment in the second and subsequent convictions may be such that the sentence imposed shall begin when the judgment and the sentence imposed in the preceding conviction has ceased to operate. See TEX. CODE CRIM.PROC.ANN. art. 42.08 (Vernon 1992). In *Vasquez v. State,* 712 S.W.2d 754, 755 (Tex.Crim.App.1986), the court of criminal appeals stated that "if the court's discretion is to be exercised as the statute [article 42.08] provides it *must* be done at the time of pronouncement of sentence." (emphasis added). The record reflects that the State filed a motion to cumulate sentence two days prior to sentencing. The following transpired at punishment hearing on July 17, 1991:

THE COURT: Having nothing further to say, it is the order of this Court that you, Donald Eugene Dutton, having been found guilty in Cause No. 585598, of the first degree felony offense of aggravated assault on a police officer and who's further been found to have previously been convicted and whose punishment has been assessed at life in the Institutional Division of the Texas Department of Criminal Justice, that you be remanded to the sheriff of Harris County until you can be transferred to the Texas Department of Corrections or anyone else legally authorized to accept such convicts where you shall be confined for the term of your natural life.

You may take him away.

(Jury dismissed).

[STATE'S ATTORNEY]: We have a motion on file to cumulate.

THE COURT: I understand that. That's what we're going to talk about right now. Do you want to put on any additional evidence in regard to that?

[DEFENSE ATTORNEY]: (Shakes head negatively.)

THE COURT: Do you have any additional evidence in regard to that?

[STATE'S ATTORNEY]: No, sir.

THE COURT: I'll take it up as soon as I get through talking with the jury.

[Motion to stack sentences was granted, but was not recorded by the court reporter].

The judgment entered that day, on July 17, 1991, reflects the trial court entered the following order concerning cumulation of sentences:

and it is further ordered by the court that the punishment under this sentence herein imposed shall begin when the judgment and sentence against this defendant in Cause Number 486303 in the 351st Court of Harris County, Texas, wherein the Defendant was on the 23rd of June 1988, duly and legally sentenced to serve a term of life and the offense of aggravated sexual assault shall have ceased to operate.

The judgment also recites that appellant was present. There is nothing to indicate otherwise. Appellant suggests that the court took the motion to cumulate under advisement and that there was no oral hearing. We have nothing to support that proposition from the record, only that the motion to stack sentences was granted off the record. The appellate record does not contain the statement of facts from the hearing or lack of hearing on the State's motion to cumulate. The record reflects, by the court's judgment, that appellant was present during the hearing on the motion to cumulate immediately subsequent to the court's initial oral pronouncement of the sentence.

■■ Appellant argument seems to be that because the initial "oral" pronouncement did not include the order to cumulate, we are required under article 42.08, per *Vasquez, supra,* to delete the cumulation order since it was not done at the time of pronouncement. We do not agree that pronouncement was complete at the point the judge stated "You may take him away." This court has previously made clear that implicit in the term "pronouncement" in article 42.08 is a written judgment reflecting the cumulation. *Perez*

*v. State*, 831 S.W.2d 884 (Tex.App.—Houston [14th Dist.] 1992, no pet). An oral cumulation order without a written judgment and sentence is void. *Id.* It, therefore, follows that there had not been an actual official pronouncement of the sentence until the written judgment and sentence was signed. On July 17, 1991, the judge signed the judgment in appellant's cause. It reflects that appellant was present during both the oral pronouncement that is included in the record before us and the oral pronouncement regarding cumulation. We find that the order of cumulation was in compliance with article 42.08 and that pronouncement of the cumulation was done at the time of sentencing. Appellant's sixth point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.