**Yuri Khomaash LUCKETTE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 07–94–0235–CR.

Court of Appeals of Texas, Amarillo.

Sept. 21, 1995.

Rehearing Overruled Oct. 16, 1995.

---

Law Offices of John Bennett, John Bennett, Amarillo, for appellant.

Potter County District Attorney, Rebecca King, Acting District Attorney, John L. Owen, Amarillo, for appellee.

Before DODSON, BOYD and QUINN, JJ.

QUINN, Judge.

Appellant, Yuri Khomaash Luckette, was convicted by a jury for aggravated robbery and sentenced to fifty years confinement with a $10,000 fine. In two points of error, he asked whether the evidence was insufficient to support his conviction and whether he was denied effective assistance of counsel. We answer no and affirm.

### Point of Error One

Appellant entered an Amarillo convenience store, proceeded to the cashier's counter, pointed an automatic pistol approximately six (6) inches from the face of the clerk and instructed the clerk to open the cash drawer. He left empty-handed after several futile attempts by the clerk to open the drawer.

No one disputed the commission of a robbery. In fact, appellant executed a written confession admitting as much. However, he denied using a deadly weapon during the escapade. The object pointed at the head of his victim was allegedly a broken BB gun. Thus, the trial testimony focused upon the aggravating element of the crime, that is, whether the gun was real or merely a toy. The jury believed it to be real, given its verdict.

Having reviewed the record in the manner directed by the Texas Court of Criminal Appeals in *Moreno v. State*, 755 S.W.2d 866 (Tex.Crim.App.1988), we overrule the point. Sufficient evidence appeared of record to uphold conviction.

The store clerk testified that his assailant "brandishe[d] what appear[ed] to be a pistol of some sort" at him, "[h]e extended his arm with what appeared to be a pistol into [sic] it," and "he had the pistol extended, he kept shaking the pistol in a threatening type manner." The pistol was an automatic, as opposed to a revolver, "blue-black or black in color" and "appeared to be metal." It also had a barrel with an "outside circumference ... the same ... as a roll of dimes" and length of "about the length of a roll of dimes as well." At the end of the barrel appeared an aperture from whence a bullet or projectile could emerge which opening "was approximately a third the size of the overall circumference of the barrel" and quite similar to that of the .25 caliber automatic weapon shown to him and admitted at trial.

That the clerk questioned whether the weapon was real or merely a toy was also admitted. Yet, "it was the size and shape of what would be a real weapon ... [a]nd the overall color and such was not inconsistent with a real weapon...." These circumstances, coupled with the amount of time

involved, convinced him to assume that the item levelled six inches from his face was indeed a firearm.

In hearing the description proffered by the clerk, a weapons expert testified that the item "was probably a firearm rather than a BB gun." Only two companies in the United States manufactured BB guns and neither had a product similar to that described, according to the expert. He further added that the caliber of a BB gun was smaller than that of the object brandished by appellant.

In his defense, appellant called his brother to testify that the weapon was nothing more than a broken toy cap gun, as opposed to a BB gun. The witness found the toy about a week before "Yuri committed the crime." Allegedly, the two "played with it plenty of times" before appellant took it with him on the night of the robbery.

Thus, the jury heard evidence that the object had the caliber and look of a firearm. From that, it could have reasonably inferred that item was a firearm. The contrary evidence merely became part of the entire amalgam to be weighed by the fact finder. Who to believe and what balance to strike fell within its exclusive domain. More importantly, it was entitled to reject the evidence suggesting the item was a toy, especially in view of the discrepancy between appellant's and his brother's description of the object.

In sum, the pending case compares favorably to *Rogers v. State*, 795 S.W.2d 300 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). Therein, the victim testified that though she believed the object was a gun, it could have been a toy. Her equivocation did not render baseless the fact finder's decision that it was a firearm. The weapon's similarity to a gun actually shown the witness at trial and her belief that it was real provided enough evidence to support conviction. *Id.* at 303. The same is true here. Finding the object to be a firearm, as the jury necessarily did, was neither irrational nor unsupported by more than a mere modicum of testimony. We, therefore, overrule point one.

### Point of Error Two

Next, appellant believed he failed to receive effective assistance of counsel. To support his argument, he cited eight examples of allegedly deficient conduct. We, however, disagree with his characterization of trial counsel's performance and overrule this point as well.

 The right to counsel encompasses reasonably effective, not perfect, representation. *Villatoro v. State*, 897 S.W.2d 943, 946 (Tex.App.—Amarillo 1995, no writ); *Holland v. State*, 761 S.W.2d 307, 320 (Tex.Crim.App. 1988). Whether this standard is met depends upon the totality of the circumstances and counsel's entire performance. *Id.* Furthermore, we judge his performance by setting aside the "perfect" vision of hindsight and avoiding the temptation to second-guess. Instead, the circumstances arising and law applicable at the time control our review. *Ex parte Akhtab*, 901 S.W.2d 488, 490 (Tex. Crim.App.1995). Finally, the conduct complained of must not only be wrong but also prejudicial before the accused can prevail. *Id.; Villatoro v. State*, 897 S.W.2d at 946. Unless we conclude that but for the deficiency there appeared a reasonable probability that the outcome would have differed, our hands are staid. *Ex parte Akhtab*, 901 S.W.2d at 490. With this in mind, we now address the alleged mistakes.

 First, appellant criticizes his trial counsel for "failing to object" to the court's reopening of the case to permit the state to introduce its exhibit number five. The latter represented the .25 caliber handgun which the store clerk compared, at trial, to the weapon held by appellant. In making the comparison, the clerk decided that "for all practical purposes" he could not differentiate between the caliber of the two. Because the omission granted the jurors opportunity "to hold and feel the weapon, pass it around the room and look at it in awe," appellant deemed it prejudicial.

 Though admission of the gun may have helped sway the jury to convict, we find no error in it. Whether to reopen laid within the trial judge's considered discretion. *Holifield v. State*, 599 S.W.2d 836, 837 (Tex.Crim. App.1980). Refusing to do so when the movant sought to tender relevant and admissible

evidence at a time when the administration of justice would go unimpeded, may have constituted error. *Id. quoting, Vital v. State,* 523 S.W.2d 662 (Tex.Crim.App.1975); *accord, Phillips v. State,* 878 S.W.2d 617, 618–19 (Tex.App.—Corpus Christi 1994, no writ) (holding that the failure to reopen was error). Furthermore, "similar type weapons," like that proffered at bar, are generally relevant and admissible. *Simmons v. State,* 622 S.W.2d 111, 113 (Tex.Crim.App.1981). Thus, it appears that the court had little choice but to reopen the evidence. It also relieved trial counsel from having to object to avoid a claim of deficient performance. He was not required to object simply for the sake of objecting. *See Holland v. State,* 761 S.W.2d at 318–19 (holding that trial counsel is under no duty to do what would amount to a futile act).

■■■ Next, counsel allegedly erred by neglecting to challenge the racial composition of the jury venire since it "contained no blacks." Admittedly, the purposeful or systematic exclusion of individuals from jury service because of their race offends both statute and constitutional dictate. *Johnson v. State,* 879 S.W.2d 313, 315 (Tex.App.—Amarillo 1994, no writ). Yet, before counsel may be charged with misfeasance, logic demands proof that the invidious discrimination occurred. *See Hall v. State,* 862 S.W.2d 710, 715 (Tex.App.—Beaumont 1993, no writ) (refusing to hold representation ineffective since the claimant presented no evidence of systematic exclusion). Appellant offered none. He cited nothing to show that the State struck blacks or any other racial minority from the jury venire.

Nor did he offer any probative evidence to support an inference that the State somehow manipulated the method by which citizens were called for jury duty. Such would be especially pertinent here since the record suggests that no blacks were members of the venire from its inception. Furthermore, appellant himself acknowledges that the simple fact that the racial composition of the venire disproportionately reflected the percentage of minorities in the community most likely posed no basis to attack the array.

Similarly lacking probative force is the statement of a prospective juror evincing his concern "with the fact that [he didn't] see any black representation here for the jury." This remark was tantamount to defense counsel's, in *Dutton v. State,* 836 S.W.2d 221 (Tex.App.—Houston [14th Dist.] 1992, no writ), that "'there are no black jurors on the jury panel [sic] on the jury actually selected.'" *Id.* at 224. Neither statement provided the evidence "necessary to assess appellant's claim." *Id.* Because allegations of ineffective assistance must have firm basis, *Holland v. State,* 761 S.W.2d at 320, we cannot act upon the innuendo appellant raised here.

■■■ Third, appellant complained of his counsel's failure to object to the inclusion of an instruction on aggravated robbery in the charge. Insufficient evidence allegedly supported its submission. To the extent that the evidence sufficed to support the verdict of aggravated robbery, as we decided above, it further provided basis for the trial court to instruct on aggravated robbery. Again, counsel is not required to object to a legitimate act of the court to be effective.

■■■ Appellant next chides counsel for being unprepared, that is, in not knowing the substance of three motions in limine filed by the state before trial. The motions, purportedly filed immediately before trial, dealt with tangential matter such as the name the prosecutor wanted opposing counsel to invoke in referring to him, reference to polygraph tests, counsel's use of personal opinion, and the admission of character evidence without first approaching the bench. Yet, how that single instance of unpreparedness, assuming he was so, affected the verdict went unexplained by appellant. Indeed, the matters were fully discussed before defense counsel decided to acquiesce to them. Nor did appellant disclose how one could reasonably conclude that a momentary inability to recall incidental pretrial motions filed right before trial rendered counsel's entire conduct deficient. We conclude that it did not.

■■■ The next complaint involved the admission of evidence, during the punishment phase of trial, regarding an escape attempted

by someone with whom appellant was jailed. The witness mentioned in passing that an individual with whom appellant had contact tried to escape. Nevertheless, the criminal act was not attributed to appellant. Counsel did not object to the remark but permitted his client to testify and distance himself from the crime.

Appellant labelled the conduct prejudicial and "most unstrategic." Yet, we cannot accept his characterizations. Counsel could well have thought it best to simply nullify any adverse affect of the testimony by simply having his client explain that he was uninvolved. That others may have approached the situation differently did not render counsel's strategy defective or unduly prejudicial. Again, we do not second-guess possible trial strategy but correct firmly established mistake. The grievance made here was not such.

Sixth, appellant questioned counsel for not tendering into evidence the decision of the Texas Board of Pardons and Paroles revoking his parole. He suggested that in revoking parole the Board found him guilty of simple robbery. Consequently, that finding should have been used to help sway the jury, appellant concluded. In considering the proposition, we note the utter absence of any citation to the record wherein the supposed Board decision is located. Our review of the file found it in neither the transcript nor the exhibit admitted at trial. Indeed, the state argued that by raising the Board decision, appellant exceeded the scope of the record.

 Simply put, our review is limited to the confines of the appellate record. *Sandles v. State*, 887 S.W.2d 252, 254 (Tex. App.—Beaumont 1994, no pet.). We cannot assume the tenor documents omitted therefrom. Furthermore, procedural rule obligated appellant to provide this court a record sufficient to support his allegations. *Id.; Tex.R.App.P.* 50(d); *O'Neal v. State*, 826 S.W.2d 172, 173 (Tex.Crim.App.1992). In his having not done so, we have no basis to act. *Sandles v. State, supra* (overruling claim of ineffective assistance since evidence supporting allegation was not formally part of the appellate record).

 Next, appellant attacks counsel for failing to object to the admission of photographs labelled State's exhibits two, three and four. Each were excised from a video tape and converted into still photos. Furthermore, they were allegedly inadmissible due to improper authentication. Yet, the statement of facts reveals that the store clerk answered "yes" when asked whether he recognized the substance of the pictures. After describing what they purported to show, he again answered "yes" to the question of whether the exhibits "accurately reflect the scene that night." In so answering, the clerk adequately authenticated the exhibits. *Huffman v. State*, 746 S.W.2d 212, 221–22 (Tex. Crim.App.1988) (holding that one authenticates photos by testifying that they accurately depict the scene at issue). The state need not have called the photographer or person who converted them into still form. *Hughes v. State*, 878 S.W.2d 142, 155 (Tex.Crim.App. 1992). Because the trial court acted appropriately, defense counsel cannot be faulted for withholding objection.

 Lastly, counsel is faulted for arguing that the object used by appellant in committing the robbery was a "BB gun" while defense witnesses called it a "toy gun." Like several other of his complaints, appellant failed to explain how this adversely affected the verdict. Indeed, little harm can be seen when the labelled appended by trial counsel was the very same used by appellant in his written confession.

In retrospect, appellant's argument tended more towards demanding perfection from his legal representative. Were that attainable from lawyers, it would no doubt be a standard meriting consideration. Yet, the practice of law remains an endeavor pursued by humans. Though some may periodically compare their actions to that of angels and comprehension to that of gods, they nonetheless are human and rife with the shortcomings that make them human. Holding them to a standard of perfection when neither they nor theorists can define perfection is simply futile. Ergo, legal counsel need act only in a

manner that secures a fair trial. Given the confession of guilt with which he had to contend, the unoffensive nature of his deportment, and the general tenor of the evidence, defense counsel met the expectations placed on him by law.

Accordingly, we affirm the judgment of the trial court.