**Jimmie Charles HATCHETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–94–00719–CR.

Court of Appeals of Texas,
Houston [14th Dist.].

Aug. 29, 1996.

Discretionary Review Refused Oct. 30, 1996.

Mark Ellis, Houston, for appellant.

Lester Blizzard, Houston, for appellee.

Before LEE, YATES and FOWLER, JJ.

## OPINION

FOWLER, Justice.

A jury convicted appellant, Jimmie Charles Hatchett, of the offense of aggravated assault. His punishment was assessed at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of 60 years. In four points of error, appellant contends that the trial court erred in (1) failing to conduct an evidentiary hearing on his objection to the State's use of its peremptory jury strikes; (2) overruling this objection to the State's jury strikes as a matter of law; (3) convicting him without sufficient evidence as to all the elements of the offense; and (4) allowing his testimony to be improperly impeached with a prior conviction. We affirm the judgment of the trial court.

Appellant's first and second points of error relate to his objection to the venire based on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct.

1712, 90 L.Ed.2d 69 (1986). After voir dire was concluded, appellant objected, claiming that the State had excluded four black veniremembers on the basis of race:

MR. ELLIS: As attorney for Mr. Hatchett, I hereby make a challenge to the veniremen based on the United States Supreme Court case of *Batson v. Kentucky.*

The defendant Mr. Hatchett is a black man. The Prosecutor has exercised peremptory challenges to remove several members of Mr. Hatchett's racial group.

Specifically, the State has exercised peremptory strikes against Samuel Lancaster, No. 2, who is a black male; against Mr. Melvin Easterling, No. 4, who is a black male; against Linzetta Smith, No. 8, who is a black female; against Pearline Washington, No. 9, a black female. And we believe that none of the previously stated veniremen made any statements to the Prosecutor or to the defendants during voir dire which would be a race neutral reason to strike those veniremen off the panel.

The court overruled appellant's *Batson* challenge, finding that no *prima facie* showing of racial discrimination had been made. After the jury was sworn and dismissed, however, the appellant called the prosecutor as a witness and made an offer of proof.

During appellant's examination, the prosecutor testified that he struck veniremembers Lancaster, Easterling, Smith, and Washington because each had indicated that they believed the primary purpose of criminal punishment was the rehabilitation of the convicted.[1] Moreover, Ms. Smith stated that she had a close friend who had been charged as an accessory to murder. Appellant then asked why white veniremembers Fawcette, Hawkins, Sanders, and Auchterlonie, who likewise indicated a belief in rehabilitation, had been left on the jury. The prosecutor responded that while Fawcette, Hawkins, and Sanders did express a belief in rehabili-

---

1. A veniremember's belief in rehabilitation as the primary goal of punishment has been found to be a race-neutral reason for exclusion. *See Adanan-* *dus v. State,* 866 S.W.2d 210, 224–25 (Tex.Crim. App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994).

tation, that belief was conditional. Fawcette testified that her support of rehabilitation would depend upon the specific case and a defendant's prior offenses. Hawkins stated that while idealistically she believed that criminals should be rehabilitated, in practice, she believed they should be made to suffer retribution. Sanders expressed that rehabilitation was most important, but that the past history of the defendant should also be taken into account. As to veniremember Auchterlonie, the prosecutor testified that he was not struck because all the State's peremptory strikes had been used.

■■■ To establish a *prima facie* case of discrimination,[2] a defendant must show: (1) that he is a member of a cognizable racial group; (2) that the State exercised peremptory challenges to remove members of the defendant's race from the venire (relying on the principle that peremptory challenges constitute a jury selection practice which permits those to discriminate who are of a mind to discriminate); and (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude veniremembers on account of their race. *Rousseau v. State*, 824 S.W.2d 579, 584 (Tex.Crim.App. 1992). The trial court's findings regarding the defendant's *prima facie* case will not be overturned unless they are shown to be clearly erroneous. *Williams v. State*, 804 S.W.2d 95, 101 (Tex.Crim.App.), *cert. denied*, 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991).

■■ In this case, appellant argued only that four black veniremembers had been per-

emptorily struck. He offered no other facts or circumstances which would give rise to an inference of purposeful discrimination. Before determining whether the trial court erred in its decision regarding appellant's *prima facie* showing, we must note that the record is insufficient to support appellant's claim that such a showing was ever established. As in the case of *Dutton v. State*, 836 S.W.2d 221 (Tex.App.—Houston [14th Dist.], 1992, no pet.), we possess rather limited information about the venire panel as a whole.

We know only that four black venire members were peremptorily struck. We do not know the racial composition of the entire panel. Nothing in the record reflects the race of the venire members challenged for cause or of the venire members peremptorily challenged by appellant. *See Id.* at 224. Such incomplete data will not allow us to perform a statistical analysis of the appellant's *prima facie* case. *Id.*

■■ Nevertheless, even if this Court found that a *prima facie* case had been established, the prosecutor articulated valid, race-neutral reasons for the State's exercise of its peremptory strikes. The trial court's disposition of appellant's *Batson* objection was not clearly erroneous. Appellant's first and second points of error are overruled.

■■ In appellant's third point of error, he contends that the evidence of the aggravating element, *i.e.*, the deadly weapon, was insufficient to support his conviction. When reviewing the sufficiency of the evidence,[3] this Court must decide "whether, after viewing the evidence in the light most favorable

2. When the prosecutor has articulated race-neutral reasons for the peremptory challenges and the trial court has ruled on the ultimate question of purposeful discrimination, the issue of whether a defendant has established a *prima facie* case is moot. *Staley v. State*, 887 S.W.2d 885, 897 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1366, 131 L.Ed.2d 222 (1995); *Malone v. State*, 919 S.W.2d 410 (Tex.Crim.App.1996). Here, however, while the prosecutor articulated his reasons for the strikes during the defendant's offer of proof, the trial court made no ultimate ruling on the question of discrimination, making only a ruling as to the *prima facie* case. Thus,

the issue of the defendant's *prima facie* case remains open.

3. We recognize that the Texas Court of Criminal Appeals recently held that the intermediate courts of appeal have the authority to review the factual sufficiency as well as the legal sufficiency of the evidence. *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App. 1996). However, appellant has not requested that we review the factual sufficiency of the evidence supporting his conviction. Thus, we limit our review of the sufficiency of the evidence to the standards enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim. App.1993) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

Here, the record shows that the complainant, an employee of Home Depot, observed the appellant enter the hardware section of the store, pick up an electric screwdriver, and conceal it beneath his shirt. The appellant then left the store without attempting to pay for the tool. The complainant notified his manager of what he had seen and then, joined by another employee, followed appellant out of the store. Once in the parking lot, the appellant realized that he was being followed. He removed the screwdriver from his shirt and threw it under a nearby vehicle.

As the other employee recovered the screwdriver from underneath the vehicle, the complainant asked appellant to accompany him back inside the store; appellant refused. The complainant persisted, asking him to come back to the store so the matter could be resolved. At this point, the appellant was standing within three feet of the complainant. He then pulled a knife from his back pocket, saying, "I got something for you, white boy." Appellant did not open the blade of the knife or attempt to strike the complainant with it. He did, however, waive it slightly as he held it at his side.

Frightened, the complainant backed away. As he did so, the appellant wheeled and ran toward the nearby freeway. The complainant followed and watched as appellant was picked up by a getaway car. He was able to obtain the license number as the car sped away. The police were called, and a description of appellant and the car were broadcast over the police radio. Subsequently, the police stopped a vehicle matching the description given by the complainant. The appellant was found in the vehicle, and a knife identified by the complainant as similar to the one used in the offense was discovered under the seat. This knife was later offered as State's exhibit No. 1.

Detective Robert Torres, who had worked on cases where individuals had been wounded with knives and was familiar with the type of wounds that knives can inflict, examined the knife and testified that it would be capable of causing death or serious bodily injury. Officer W.T. Schultz also examined the knife. He testified that the knife had been modified by having epoxy placed in the blade channel. This modification prevented the knife from closing completely and allowed it to be opened quickly by merely catching the tip of the blade on one's trouser seam.

A knife is not a deadly weapon per se. *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App.1983). The State, however, may prove a particular knife to be a deadly weapon by showing its size, shape, and sharpness, the manner of its use or intended use, and its capacity to produce death or serious bodily injury. *Id.* The jury, in determining the deadliness of a weapon, may consider all the facts of a case, including words spoken by the accused. *Id.*

Appellant, relying on the case of *Davidson v. State*, 602 S.W.2d 272 (Tex.Crim.App. 1980), argues that the evidence is insufficient to show that the knife he used was in fact a deadly weapon. In *Davidson,* the defendant was confronted in the parking lot of a grocery store after shoplifting several items. The defendant pulled a knife, made a threat, and fled. The court held that the evidence was insufficient to show that he used or exhibited a deadly weapon. *Id.* at 274. This case, however, is distinguishable.

The knife in *Davidson* was never introduced into evidence, nor did the State establish the knife's deadly potential with hypothetical questions to an expert. In this case, the knife was in evidence and a police officer familiar with knife wounds testified to the weapon's ability to cause death or serious bodily harm. Moreover, the appellant's threatening statement, his close proximity to the complainant, and his ability to open the blade by flicking it against his trousers are factors which contribute to the deadly char-

acter of the weapon. Under these circumstances, we cannot say that the evidence was insufficient to show that the appellant used or exhibited a deadly weapon. Appellant's third point of error is overruled.

In his fourth point of error, appellant complains the trial court abused its discretion by overruling his motion in limine concerning a 1983 conviction for aggravated assault. The record shows that before trial, appellant filed a motion in limine seeking to bar the State from referring to this prior conviction; this motion was overruled. Later at trial, when the prosecutor raised this issue during the State's cross-examination of appellant, no objection was made.

A ruling on a motion in limine will not preserve error. *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex.Crim.App.), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985). For error to be preserved with regard to the subject matter of the motion in limine, it is absolutely necessary that an objection be made at the time when the subject is raised during the trial. *Id.* As no objection was made when the State raised this matter, appellant has failed to preserve error. Appellant's fourth point of error is overruled.

Appellant's conviction is affirmed.