NO. 07-05-0254-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



FEBRUARY 28, 2007


______________________________


 

LLOYD HARRISON PITCHFORD, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;



NO. 10,600; HONORABLE TOM NEELY, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ. 

MEMORANDUM OPINION


 Appellant Lloyd Harrison Pitchford appeals his conviction and sentence for
aggravated sexual assault. We agree with appointed counsel's conclusion that the record
fails to show any meritorious issue which would support the appeal and affirm the trial
court's judgment.

 Appellant, while represented by counsel, entered an open plea of guilty to the
charged offense and requested punishment be assessed by a jury. The trial court directed
the jury to find appellant guilty. The jury rejected appellant's request to be placed on
community supervision and assessed punishment at 60 years confinement. 

 Counsel for appellant has filed a motion to withdraw and a brief in support pursuant
to Anders v. California, 386 U.S. 738, 744-745, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The
brief discusses the factual and procedural history of the case and evidence presented. In
conformity with counsel's obligation to support the appeal to the best of his ability, Johnson
v. State, 885 S.W.2d 641, 645 (Tex.App.--Waco 1994, pet. ref'd), the brief discusses six
potential issues on appeal and explains why they do not show reversible error. Counsel
thus concludes that the appeal is frivolous. See High v. State, 573 S.W.2d 807, 813
(Tex.Crim.App. 1978).

 Counsel has certified that a copy of the Anders brief and motion to withdraw have
been served on appellant, and that counsel has advised appellant of his right to review the
record and file a pro se response. Johnson, 885 S.W.2d at 645. By letter, this court also
notified appellant of his right to submit a response to the Anders brief and motion to
withdraw filed by his counsel. Appellant has filed a response raising three issues. The
State has not filed a brief.

 We must also conduct an independent examination of the record to determine
whether there are any non-frivolous grounds on which an appeal could arguably be
founded. See Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); 
Stafford v. State, 813 S.W.2d 503, 511 (Tex.Crim.App. 1991). If this court determines the
appeal has merit, we will remand it to the trial court for appointment of new counsel. 
Stafford, 813 S.W.2d 511.

 The first issue raised in appellant's response assigns error to the trial court's failure
to ensure he was competent to enter a plea knowingly and voluntarily. In support he points
to the recitation in his written statement that it was transcribed by a deputy sheriff because
he could not "read or write very well." (1) On this evidence he contends the trial court was
obligated to conduct a hearing to determine his competency.

 A defendant is presumed to be competent to stand trial unless proven incompetent
by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art. 46B.003(b) (Vernon
2006). See also Tex. Code Crim. Proc. Ann. art. 26.13(b) (Vernon Supp. 2006) (court may
not accept guilty plea unless it appears defendant is mentally competent). A person is
incompetent to stand trial if he does not have sufficient present ability to consult with his
lawyer with a reasonable degree of rational understanding, or a rational as well as factual
understanding of the proceedings against him. Tex. Code Crim. Proc. Ann. art. 46B.003
(Vernon 2006). If evidence suggesting the defendant may be incompetent comes to the
attention of the trial court, it must determine, sua sponte, by informal inquiry whether there
is some evidence from any source that would support a finding that the defendant may be
incompetent to stand trial. Id. art. 46B.004(c). A competency inquiry is not required,
however, unless the evidence is sufficient to create a bona fide doubt in the mind of the
judge whether the defendant is legally competent. McDaniel v. State, 98 S.W.3d 704, 710
(Tex.Crim.App. 2003). Evidence is usually sufficient to create a bona fide doubt regarding
competency if it shows "recent severe mental illness, at least moderate mental retardation,
or truly bizarre acts by the defendant." Id. We review a trial court's decision not to take the
next procedural step and appoint an expert to examine a defendant for abuse of discretion. 
Young v. State, 177 S.W.3d 136, 139 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (citing
Bigby v. State, 892 S.W.2d 864, 885 (Tex.Crim.App. 1994)); art. 46B.005(a).

 At the time of his guilty plea, appellant expressly denied any claim to mental
incompetence to stand trial and denied that he had ever been treated for any mental
illness, disease "or anything like that." Defense counsel denied he had seen any evidence
appellant was not competent. The record also shows appellant's responses at trial were
lucid and responsive to the questions asked. We find no arguable issue is raised on
appellant's competence.

 The second issue raised in appellant's pro se response asserts his trial counsel was
ineffective based on counsel's failure to familiarize himself with the facts of the case, filing
only two motions, and failure to seek a competency hearing. Appellant also points to trial
counsel's failure to file a complaint on denial of the motion to suppress "to preserve it for
error." 

 To establish denial of the effective assistance of trial counsel an appellant must
establish (1) his counsel's performance was deficient, and (2) the deficient performance
prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984), Hernandez v. State, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986). This
standard applies to claims arising from a noncapital sentencing phase. Hernandez v. State,
988 S.W.2d 770, 772 (Tex.Crim.App. 1999). The first component of Strickland is met by
showing trial counsel made errors so significant that he was not functioning as the counsel
guaranteed by the Sixth Amendment to the United States Constitution. 466 U.S. at 687. 
To show prejudice, the defendant must show there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different. 
A reasonable probability is a probability sufficient to undermine confidence in the outcome. 
Id. at 694. A reviewing a court must indulge a strong presumption that counsel's conduct
falls within the wide range of reasonable professional assistance; that is, the defendant
must overcome the presumption that, under the circumstances, the challenged action might
be considered sound trial strategy. Id. at 689; Jackson v. State, 877 S.W.2d 768, 771
(Tex.Crim.App. 1994). A claim of ineffective assistance of counsel must be affirmatively
supported by the record. Tabora v. State, 14 S.W.3d 332, 336 (Tex.App.- Houston [14th
Dist.] 2000, no pet.). 

 We find no support in the record for appellant's view that his counsel's performance
was deficient. It does not suggest any additional motions counsel should have presented
to the trial court. During voir dire counsel actively questioned the panel, successfully
challenging several members for cause. He also conducted a thorough examination of the
State's witnesses, obtaining the substantial admissions from the complainant that she
initiated several encounters with appellant and had attempted to contact him shortly before
trial. Appellant's belief counsel was required to present a separate objection to the
overruling of his motion to suppress to preserve the complaint for review is mistaken. 
Preservation of a complaint under Rule of Appellate Procedure 33.1(a) requires only a
timely "request, objection, or motion" and an adverse ruling. Only if the trial court refused
to rule on the request, objection or motion is a separate complaint on the refusal required. 
Tex. R. App. P. 33.1(a)(2)(B). The record also contains a written stipulation signed by
appellant that he was satisfied with his counsel's representation. 

 Appellant's third issue alleges the trial court failed to adequately admonish him as
required by article 26.13 of the Code of Criminal Procedure. He points to the absence of
oral admonishments from the trial judge concerning the effect of a guilty plea on non-citizens and concerning the requirement to register as a sex offender. See Tex. Code
Crim. Proc. Ann. art. 26.13(a)(4), (5) (Vernon Supp. 2006). The admonishments mandated
by article 26.13 are not constitutionally required but are designed to help the trial court
ensure that the waiver of constitutional rights resulting from a plea of guilty is made
knowingly and voluntarily. Anderson v. State, 182 S.W.3d 914, 917-18 (Tex.Crim.App.
2006); Aguirre-Mata v. State, 125 S.W.3d 473, 476 (Tex.Crim.App. 2003). The
admonishments required by article 26.13(a) may be made orally or in writing. Tex. Code
Crim. Proc. Ann. art. 26.13(d) (Vernon Supp. 2006). Here the record contains written
admonishments, signed by appellant and his counsel, advising him of the potential effects
of a guilty plea if he were not a citizen. 

 We do agree the record fails to show the trial court advised appellant his plea of
guilty would subject him to sex offender registration requirements. Tex. Code Crim Proc.
Ann. art. 26.13(a)(5) (Vernon 2006). This failure was error. Where a defendant complains
of the failure to follow the dictates of the statute, we must apply the harm analysis of Rule
of Appellate Procedure 44.2(b) and determine if the error affects a substantial right.
Anderson, 182 S.W.3d at 918; Lopez v. State, 71 S.W.3d 511, 515 (Tex.App.--Fort Worth
2002, no pet.). In applying Rule 44.2(b) to the failure to give an admonition the question
presented is whether, considering the record as a whole, there is a fair assurance the
defendant's decision to plead guilty would not have changed had the court admonished
him. 182 S.W.3d at 919. Appellant does not claim he was unaware of this consequence
of his plea. Here, as in Anderson, the defense relied on the registration requirement in
requesting a probation recommendation from the jury. Both during his opening statement
to the jury and in closing argument, appellant's counsel made reference to the "special
conditions" applicable to defendants found guilty of a sexual offense. During closing
argument defense counsel argued that if given probation, appellant would not be "let loose"
as the prosecutor suggested, but be on "special conditions [as] a sex offender. He has to
register." On this record, no harm can be shown by the trial court's failure to admonish
appellant on the sex offender registration requirement, and no error on which an appeal
could be predicated is present.

 Our review of counsel's brief and the record convinces us that appellate counsel
conducted a thorough review of the record. We have also made an independent
examination of the entire record to determine whether there are any arguable grounds
which might support the appeal. Id. We agree with counsel that there are no meritorious
grounds for review.

 Accordingly, counsel's motion to withdraw is granted and we affirm the judgment of
the trial court.


 James T. Campbell

 Justice






Do not publish. 

1. Appellant also makes reference to school records from 1966 through 1976,
attached to his brief. Our review must be based on the appellate record. We are unable
to consider documents attached to a brief but not appearing in the record. Luckette v.
State, 906 S.W.2d 663, 668 (Tex.App.-Amarillo 1995, pet. ref'd). We note, however, that
consideration of the school records would not change our decision in this appeal. 


ion by "'following too close'" to another vehicle). More importantly, an officer's
statement that he simply relied on his experience and training to arrive at the conclusion
does not fill the void. Id. at 494. Given this, we cannot but say that the officer's opinion
about appellant acting suspiciously when crossing the street was conclusory and,
therefore, without evidentiary value. 

 Nor can we say that any other reason given by the officers as basis for immediately
raiding the house were of any greater weight. It may well be, as suggested by the officers,
that had appellant seen them when crossing the street he could have destroyed the
contraband and money, attempted to flee, or secured weapons to defend himself against
a raid. Yet, neither were we cited to nor did we find evidence remotely suggesting that
those watching the house were in a location permitting easy discovery or that in looking up
and down the street, appellant or anyone else spied their presence. This void is also telling
since, logically, an individual must be aware of an officer's presence before it can be said
that knowledge of the officer's presence somehow influenced the individual's actions. See
McNairy v. State, 835 S.W.2d at 107 (noting that relevant to the belief that evidence may
be destroyed is, among other things, the existence of information indicating that the
possessor of narcotics is aware that the police are on his trail). In short, no facts appear
of record rendering the beliefs uttered by the police objectively reasonable. Indeed, the
actual circumstances confronting the officers was best summed up when one witness
testified that ". . . we just didn't know what was going on with [the evidence] at that time." 
Again, inferences, opinions, and conclusions stimulating an officer to act must be
reasonably objective and supported by fact as opposed to speculation or surmise. And,
those facts were missing from the record here. 

 Consequently, we hold that the record fails to contain evidence from which the
presence of exigent circumstances could be reasonably inferred. So, the officers' entry
into the 37th Street house was illegal. Having concluded this, we must now conduct a Brick
analysis to decide whether appellant's purported consent to search the home was free of
taint arising from the illegal raid. For purposes of this undertaking, we assume that
appellant did consent. Thus, our focus lies on the matter of attenuation, the pertinent
indicia cited in Brick, and the efforts of the State to prove attenuation by clear and
convincing evidence. 

 Of the six Brick indicia, all but one weighs against the State. For instance,
appellant's execution of the written consent form came within minutes of the breach of the
home by the officers. That is hardly sufficient time for the occurrence of intervening acts
permitting cool reflection by appellant. Second, that the entry was flagrant police
misconduct is illustrated not only by the want of exigent circumstances but also by the
testimony of several of the officers. Again, one opined that if the decision where left to him,
he would have first obtained a warrant before entering the house. Another said that the
decision to gain entry into the house either through consent or by force was made before
appellant undertook the suspicious act of crossing the street after looking both ways. 
Another testified that the decision was made to enter once it was determined that the
substance obtained from the house was contraband. This evidence evinces that the
officers were intent on immediately entering the home irrespective of whether they had the
time and ability to obtain a warrant.

 Third, though some evidence indicated that appellant volunteered information to the
officers before they Mirandized him, the record does not indicate that the information
included authorization to search the house. Rather, the record illustrates that the officers
obtained a written consent form and gave it to him for his perusal and execution upon the
heels of securing the premises and its occupants. 

 Fourth, as to the matter of whether the officers' purpose in entering the home was
to secure consent to search, we again turn to the testimony that 1) they were going to gain
entry through consent or by force, 2) an officer was directed to secure the requisite form
within minutes of his entry into the house, and 3) the consent form was signed within
minutes of appellant being handcuffed and taken to the rear bedroom. Those
circumstances reasonably support the inference that the officers entered the house to
obtain authorization to search it.

 Fifth, it can hardly be denied that the unlawful entry into and sweep of appellant's
home coupled with the unlawful detention of those in it brought about police observation
of the object for which they sought consent to search. Again, they had no warrant to enter
or search the house. Nor was the contraband they sought within plain view. Similarly, it
was not until after the door was breached and the occupants were handcuffed and placed
on the ground that appellant uttered comments about the location of the drugs and drug
money. And, all this happened within a time span of mere minutes. As one officer
testified, the general plan was to act quickly and deny others time to prepare. 

 Finally, while evidence illustrates that appellant was told of his right to refuse
consent, one can only wonder if the utterance evinced a legitimate choice. By that time,
the officers had already entered the home illegally, ran through the house yelling and with
guns drawn, and seized those present, including appellant, without legal justification. 
Moreover, when asked what would have happened if appellant refused to give his consent,
an officer testified that they would have obtained a search warrant. Though the witness
did not say whether appellant and the other occupants would have been freed from the
unlawful restraint or whether the officers would have exited the premises while the warrant
was obtained, nothing of record suggests that they would have.

 In short, it does not matter whether appellant's consent was voluntary. The Brick
indicia weigh against a finding that sufficient attenuation occurred between the unlawful
seizure and consent afforded by appellant. Thus, the trial court erred in overruling
appellant's motion to suppress appellant's statements made during and the evidence found
as a result of the unlawful seizure. (4) 

Issue Two - Sufficiency of the Evidence


 In his second and last issue, appellant argued that the evidence was legally and
factually insufficient to support the finding that he possessed cocaine either as a party or
as a principle. Had the evidence obtained as a result of the raid been admissible, it would
have been more than legally and factually sufficient enough to support his conviction. 
Thus, the issue is overruled.

 Accordingly, we reverse the judgment of the trial court and remand the cause.


 Brian Quinn 

 Chief Justice

Publish.
1. The record does not disclose whether the two children were also handcuffed and made to lie on the
floor.
2. Exigent circumstances justifying a warrantless entry into a home include 1) rendering aid or
assistance to persons whom the officers reasonably believe are in need of assistance, 2) preventing the
destruction of evidence or contraband, 3) protecting the officers from persons whom they reasonably believe
to be present, armed, and dangerous, Estrada v. State, 154 S.W.3d 604, 608 n.12 (Tex. Crim. App. 2005),
and 4) an increased likelihood of apprehending a suspect. Barocio v. State, 158 S.W.3d 498, 500 (Tex. Crim.
App. 2005); McNairy v. State, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991). 
3. Whether appellant again looked up and down the road when returning to the 37th Street house went
unmentioned.
4. Though the State believes the opinion in Reasor v. State, 12 S.W.3d 813 (Tex. Crim. App. 2000) to
be controlling, we find it readily distinguishable. First, in Reasor nothing was said of Brick and its holding. 
Indeed, the court seemed to focus more on the voluntariness of consent than the issue of attenuation. And,
while it did say that the consent was sufficiently attenuated from the illegal seizure because the officers had
not found any contraband during the protective sweep, id. at 818, we hesitate to read Reasor as eviscerating
the applicability of all the other Brick factors via that one conclusory statement. Second, it can be said that
the officers in Reasor at least had reasonable suspicion to legitimately detain Reasor in his driveway. Here,
however, the officers had no lawful basis to initially come into contact with appellant in the manner they did. 
Third, the circumstances in Reasor indicate that more than a few minutes were involved in the interaction
between the officers and Reasor. Indeed, there the officers had sufficient time to make inquiry of Reasor and
determine that his companion was not involved. That suggests that the officers were not in the rush exhibited
by the police at bar. And, while the officers here did opt to release some of the occupants of the house,
nothing suggests that this occurred before they raided the home, secured those present, and had appellant
sign the consent form. Fourth, while the officers "repeatedly" informed Reasor of his right to remain silent and
Mirandized him before conducting the illegal sweep, the police at bar did not do so until after the illegal raid. 
Nor does the record suggest that the warnings were "repeatedly" uttered. Simply put, the purported
"reasonableness of the arresting officers" in Reasor, id., as well as the passage of time permitting minds to
cool and reflect are not apparent here.