**Opinion issued December 18, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00532-CR

————————————

**WENFORD LETTSOME, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case No. 1347045**

---

**MEMORANDUM OPINION**

A jury found appellant, Wenford Lettsome, guilty of the offense of aggravated assault of a family member.[1] After appellant pleaded true to the allegation in one enhancement paragraph that he had been previously convicted of a felony offense, the trial court assessed his punishment at confinement for 25 years. The trial court also found that he used a deadly weapon, namely, a machete, in the commission of the offense. In two issues, appellant contends that the evidence is legally insufficient to support his conviction and the trial court erred in denying him the right of allocution[2] prior to the pronouncement of his sentence.

We affirm.

**Background**

The complainant, Elleston Lettsome, testified that he lived in a house with his wife, Alphonsine Lettsome, his cousin, appellant, appellant's brother, Perseus Penn, and various other individuals. He explained that appellant had "moody ways," would start arguments, and was "very controlling." And appellant had previously threatened the complainant, stating, "Bitch, I will bust you up, you know that?" However, appellant did not have a weapon on him at the time he

---

[1] *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon 2011); *see also* TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon Supp. 2014); TEX. FAM. CODE ANN. §§ 71.0021, 71.003, 71.005 (Vernon 2014).

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 42.07 (Vernon 2006).

made the threat. The complainant further explained that appellant's threats had been "[g]etting worse" over time.

On May 6, 2012, the complainant, while preparing a meal in the kitchen, overheard appellant say unprovoked to Alphonsine, "If you touch me, I bust your head open." The complainant then confronted appellant, asking him why he was "swearing at [his] wife." In response, appellant "c[a]me up in [his] face" and said, "You want to do something about it?" The complainant then, with his Bible, went outside to sit on the front porch with Penn. Alphonsine also walked outside and sat in the car parked in the driveway. The complainant then proceeded to discuss Bible scriptures with Penn.

Appellant subsequently exited the house, "came up" to the complainant with a "machete in his hand," and "sharpen[ed]" it. He "walked real close to [the complainant], real close" and, while "[t]he machete was in his hand," told the complainant, "I'm going to chop you up." From approximately five to six feet away from the complainant, appellant spoke directly to him and "[p]oint[ed] right at [him]" with the machete. He held the machete "like he was actually chopping," and he "pointed" and "shook" it at the complainant.

The complainant felt "fearful," "scared," and "threatened," and he "really" thought that appellant would "chop [him]." The complainant "fear[ed] for [his] life" and thought that appellant "would attack [him] with the machete for real." He

3

therefore went over to the car where Alphonsine was sitting, and they left the house because they were both afraid.

Alphonsine testified that on May 6, 2012, while appellant was in the living room of the house cleaning, she "ease[d] around" him in order to get to the kitchen. She explained that although she did not touch appellant, he told her that "if [she] had touched him, he would bust [her] head open." Appellant followed Alphonsine into the kitchen and continued to say that "if [she] . . . touch[ed] him, he was going to bust [her] head open." The complainant, who had heard appellant, told him to "[l]eave [Alphonsine] alone." She then "went outside" to "avoid the angry man" and sat in the car. She felt "very bad," "upset," "scared," and "threatened."

While Alphonsine sat in the car, appellant "came out" of the backdoor of the house "with the machete in his hand." Appellant held the machete by the handle, with its blade "pointed out," and he "was very, very angry." Alphonsine, however, lost sight of appellant as he walked, and she could not hear what was happening outside of the car. Although she did not see appellant "point the machete" at the complainant, the complainant subsequently came over to the car, and they left the house to get away from appellant.

Alphonsine described living with appellant as "chaos." He would get "[a]ngry about certain things," and when angry, "[h]e just goes on and on talking," "raise[s] his voice," "use[s] bad language," and acts "like he want[s] to fight."

4

Alphonsine explained that when appellant does this, she feels "[r]eally upset" and "scare[d]."

Penn testified that on May 6, 2012, while he sat outside the house with the complainant reading the Bible, appellant "c[a]me outside with a machete, sharp like this." He then said to the complainant, "I'm going to chop you up. . . . You motherfucker, I going to chop you up." Appellant, who "was mad," told the complainant that "he [was] going to chop him up into ground wheat." Penn noted that appellant also had a file in his hand and "was sharpening the machete" as he approached the complainant. He "wav[ed]" the machete and "pointed" it at the complainant when he said that he was going to chop him up. Penn estimated that appellant stood approximately eight to ten feet away from the complainant at the time that he threatened him, and Penn believed that appellant intended to hurt the complainant. The complainant, who did "nothing," then "got in the car [with Alphonsine] and . . . left." After Penn explained that he had used the machete to cut vegetation overgrowth around the house, the trial court admitted it into evidence.

Houston Police Department Officer R. Smajstrla testified that a machete is "a long . . . knife used to cut weeds and shrubs." He explained that machetes vary in lengths, but the ones he has seen are "1 to 2 feet in length." Based on his

experience, he opined that a machete is a deadly weapon because it can cause serious bodily injury due to the length and sharpness of its blade.

## Sufficiency of the Evidence

In his first issue, appellant argues that the evidence is legally insufficient to support his conviction because the State did not establish "that the machete . . . [a]ppellant allegedly used qualified as a deadly weapon."

We review the legal sufficiency of the evidence by considering all of the evidence "in the light most favorable to the prosecution" to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

A person commits an assault if he "intentionally, knowingly, or recklessly threatens another with imminent body injury." TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon Supp. 2014). A person commits the offense of aggravated assault if he "commits assault as defined in [section] 22.01 and [he] . . . uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2) (Vernon 2011). A "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (Vernon Supp. 2014). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). And "'[s]erious bodily injury' means bodily injury that creates a substantial risk of death . . . ." *Id*. § 1.07(a)(46).

Generally, a machete is "a large heavy knife used for cutting sugarcane and underbrush and as a weapon." *Hill v. State*, No. 13-05-00274-CR, 2006 WL 2382787, at *3 (Tex. App.—Corpus Christi August 17, 2006, no pet.) (mem. op., not designated for publication) (internal quotation marks omitted); *see also Francis v. State*, No. 01-11-01019-CR, 2013 WL 1694854, at *6 (Tex. App.—Houston [1st Dist. Apr. 18, 2013) (noting that machete is "a knife with a blade exceeding five and one-half inches"), *aff'd*, 428 S.W.3d 850 (Tex. Crim. App. 2014). While a knife is not a deadly weapon per se, it may be a deadly weapon based on the nature of its use or intended use. *Thomas v. State*, 821 S.W.2d 616, 619–20 (Tex. Crim.

7

App. 1991); *Miller v. State*, 177 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 2004, no pet.). In fact, almost anything can be a deadly weapon depending upon the evidence shown. *Lane v. State*, 151 S.W.3d 188, 191 n.5 (Tex. Crim. App. 2004).

To determine whether a particular knife is a deadly weapon, the following may be considered: (1) the size, shape, and sharpness of the knife; (2) the manner of its use or intended use; (3) the nature or existence of inflicted wounds; (4) the proximity of the defendant and the complainant; (5) the use of any brandishing motions; (6) statements, including threats, made by the defendant; (7) the complainant's fear of serious bodily injury or death; and (8) evidence of the knife's capacity to produce death or serious bodily injury. *See Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); *Wingfield v. State*, 282 S.W.3d 102, 107 (Tex. App.—Fort Worth 2009, pet. ref'd); *Victor v. State*, 874 S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Notably, it is not necessary to show that a complainant suffered any injury to establish that a particular knife is a deadly weapon. *Victor*, 874 S.W.2d at 751.

Further, a fact finder may consider all the surrounding facts in determining whether a knife constitutes a deadly weapon. *Blain*, 647 S.W.2d at 294; *Garcia v. State*, 17 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Evidence is sufficient to show that a knife was used in a manner that constitutes a deadly

8

weapon when the knife was "displayed in a manner conveying an express or implied threat that serious bodily injury or death [would] be inflicted." *Billey v. State*, 895 S.W.2d 417, 422 (Tex. App.—Amarillo 1995, pet. ref'd). Expert or lay testimony may be "independently sufficient" to support a deadly weapon finding. *Banargent v. State*, 228 S.W.3d 393, 398–99 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

Appellant argues that "[t]he [e]vidence [d]id [n]ot [e]stablish the [m]achete was [c]apable of [c]ausing [s]erious [b]odily [i]njury or [d]eath" because "the machete held by . . . [a]ppellant was dull," "[t]here was no testimony presented as to the length of the machete . . . [or] aspects of th[e] particular machete [which] gave it the potential to do harm," and Officer Smajstrla only spoke "in general terms and not specifically about the machete recovered" in this case.

It is true that Officer Smajstrla did generally explain that a machete is "a long . . . knife used to cut weeds and shrubs" and may cause serious bodily injury due to the length and sharpness of its blade. However, the complainant specifically testified that appellant "walked real close to [him]" with "[t]he machete in his hand," which appellant was "sharpening." And appellant, while holding the machete, expressly told the complainant that he was "going to chop [him] up." Standing approximately five to six feet away from him, appellant spoke directly to the complainant and "[p]oint[ed] right at [him]" with the machete, and he held the

9

machete "like he was actually chopping" and "pointed" and "shook" it at the complainant. The complainant explained that he "really" thought that appellant was going to "chop [him]," and he felt "fearful," "scared," and "threatened." The complainant "fear[ed] for [his] life" and thought that appellant "would attack [him] with the machete."

Penn similarly testified that appellant "c[a]me outside with a machete, sharp like this," and he told the complainant, "I'm going to chop you up. . . . You motherfucker, I going to chop you up." Appellant also said that "he [was] going to chop [the complainant] up into ground wheat." He "was mad," and he sharpened the machete as he approached the complainant, "wav[ed]" it, and "pointed" it at the complainant as he said that he was going to chop him up. Penn estimated that appellant stood approximately eight to ten feet away from the complainant at the time he threatened him. And Penn believed that appellant intended to hurt the complainant.

Contrary to appellant's assertions, there is no evidence in this case that the machete was "dull." Instead, both the complainant and Penn attested to the machete's sharpness. Further, although neither the complainant, Penn, nor Officer Smajstrla specifically described the machete used by appellant, we note that the machete itself was admitted into evidence, thereby allowing the jury to observe its characteristics. *See Rodriguez v. State*, 129 S.W.3d 551, 556 (Tex. App.—Houston

10

[1st Dist.] 2003, pet. ref'd) ("[B]ecause the knife found on [defendant] was admitted into evidence, there was no need for testimony about the size and shape of the knife, as [defendant] contends on appeal."); *see also Robertson v. State*, 163 S.W.3d 730, 734 (Tex. Crim. App. 2005) (explaining when "knife was admitted into evidence, the fact-finder was in a position to observe all of [its] characteristics").

In support of his argument that the evidence is legally insufficient to establish that the machete was a deadly weapon, appellant relies on *Davidson v. State*, 602 S.W.2d 272 (Tex. Crim. App. 1980). However, his reliance is misplaced. In *Davidson*, a jury convicted the defendant of the offense of aggravated robbery, and he asserted on appeal that the evidence was insufficient to prove that the knife he brandished during the robbery was a deadly weapon. 602 S.W.2d at 272. The Texas Court of Criminal Appeals agreed, holding that the evidence was "insufficient to show that the defendant used or intended to use the knife so as to inflict serious bodily injury or death." *Id.* at 274. In reaching its decision, the court noted that the complainant suffered no wounds and he testified that the blade of the knife was, at most, three inches long, he was five or six feet away from the defendant, and he feared seriously bodily harm or death because a friend of his had been previously hurt in a similar situation. *Id.* The knife was not introduced into evidence. *Id.*

Notably, unlike in *Davidson*, the jury here was able to view the machete used by appellant and observe and inspect its characteristics because it was admitted into evidence. The jury did not solely have to rely on testimony regarding the machete's characteristics. *See Gosdin v. State*, No. 2-08-274-CR, 2009 WL 1905378, at *2 (Tex. App.—Fort Worth July 2, 2009, pet. ref'd) (mem. op., not designated for publication) (distinguishing *Davidson* because in *Gosdin* "actual knife was admitted into evidence, allowing the jury to assess whether the knife was capable of causing death or serious bodily injury"); *Hatchett v. State*, 930 S.W.2d 844, 848–49 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (distinguishing *Davidson* where knife used by defendant in *Hatchett* admitted into evidence and holding evidence sufficient to show defendant used or exhibited deadly weapon); *Nunez v. State*, No. 01-95-00106-CR, 1995 WL 679078, at *1 (Tex. App.—Houston [1st Dist.] Nov. 16, 1995, pet. ref'd) (not designated for publication) (distinguishing *Davidson* because knife used to commit robbery in *Nunez* admitted into evidence and holding evidence sufficient to support deadly weapon finding).

Further, unlike the defendant in *Davidson*, appellant did not simply hold the knife in his hand, but instead held the machete "like he was actually chopping," and "pointed," "shook," and "wav[ed]" it at the complainant. *See McAnally v. State*, Nos. 05-91-01567, 05-91-01568-CR, 1993 WL 52469, at *3 (Tex. App.—

12

Dallas Feb. 26, 1993, no pet.) (not designated for publication) (distinguishing *Davidson* because knife admitted into evidence in *McAnally* and defendant "made slashing motions at the police officers with the knife, unlike Davidson who simply held the knife in his hand").

And, the complainant in this case feared for his life because of the manner in which appellant held the machete, "like he was actually chopping" and "pointed" and "shook" it at him. Conversely, the complainant in *Davidson* merely feared serious bodily injury or death because his friend had been injured in a similar incident—in other words, the complainant's fear had nothing to do with the manner in which the defendant actually used the knife. *See Vasquez v. State*, No. 07-04-0482-CR, 2005 WL 2000705, at *3 (Tex. App.—Amarillo Aug. 19, 2005, no pet.) (mem. op., not designated for publication) (distinguishing *Davidson* where complainant's fear in *Vasquez* was "due to the manner in which [the rock] was being used," unlike complainant in *Davidson* who "feared the weapon because his friend had been injured in a similar encounter").

Here, the evidence presented at trial revealed that: (1) the machete was sharp and large enough for Penn to use it to cut vegetation overgrowth; (2) a machete, in general, is a long knife, capable of inflicting serious bodily injury due to the length and sharpness of its blade; (3) appellant, at the time of the offense, was "real close" to the complainant; (4) appellant held the machete "like he was

13

actually chopping" and "pointed," "shook," and "wav[ed]" it at the complainant; (5) appellant told the complainant, "I'm going to chop you up. . . . You motherfucker, I going to chop you up" and that "he [was] going to chop him up into ground wheat"; and (6) the complainant felt threatened and afraid, thought appellant would attack him with the machete, and feared for his life. *See Blain*, 647 S.W.2d at 294; *Wingfield*, 282 S.W.3d at 107; *Victor*, 874 S.W.2d at 751. The jury also was able to view the machete used by appellant because it was admitted into evidence.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury could have reasonably found that the machete was capable of causing death or serious bodily injury. Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction of the offense of aggravated assault of a family member.

We overrule appellant's first issue.

**Right of Allocution**

In his second issue, appellant argues that the trial court erred in denying him the right of allocution because it failed to inquire, prior to pronouncing his sentence, as to whether appellant had anything to say as to why the sentence should not be pronounced.

The Texas Code of Criminal Procedure provides:

Before pronouncing sentence, the defendant shall be asked whether he has anything to say why the sentence should not be pronounced against him. The only reasons which can be shown, on account of which sentence cannot be pronounced, are:

1. That the defendant has received a pardon from the proper authority, on the presentation of which, legally authenticated, he shall be discharged[;]

2. That the defendant is incompetent to stand trial; and if evidence be shown to support a finding of incompetency to stand trial, no sentence shall be pronounced, and the court shall proceed under Chapter 46B; and

3. When a person who has been convicted escapes after conviction and before sentence and an individual supposed to be the same has been arrested he may before sentence is pronounced, deny that he is the person convicted, and an issue be accordingly tried before a jury, or before the court if a jury is waived, as to his identity.

TEX. CODE CRIM. PROC. ANN. art. 42.07 (Vernon 2006). The purpose of this provision is to allow a defendant to alert the trial court to any legal reason that may not be of record that bars the imposition of punishment. *Eisen v. State*, 40 S.W.3d 635 (Tex. App.—Waco 2001, pet. ref'd).

The State asserts that appellant failed to preserve this issue for our review. To preserve error for appeal, a party is required to make a timely, request, objection, or motion to the trial court and obtain an express or implied ruling. *See* TEX. R. APP. P. 33.1; *Tenon v. State*, 563 S.W.2d 622, 623–24 (Tex. Crim. App. 1978) (holding defendant failed to preserve issue for review because did not object

15

to trial court's "failure to inquire of the appellant if she had anything to say why the sentence should not be pronounced against her"); *Nicholson v. State*, 738 S.W.2d 59, 63 (Tex. App.—Houston [1st Dist.] 1987, no pet.) ("No error is preserved, however, when an appellant does not object to the court's failure to provide appellant his right of allocution or when appellant fails to timely assert the existence of any statutory reason set forth in art. 42.07 to prevent pronouncement of sentence."). Moreover, the complaining party on appeal must have clearly conveyed to the trial court the particular complaint raised on appeal by "'let[ting] the trial judge know what he wants [and] why he thinks he is entitled to it, . . . clearly enough for the judge to understand him at the time when the judge is in the proper position to do something about it.'" *Norton v. State*, 434 S.W.3d 767, 771 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009)).

In his brief, appellant candidly admits that,

> the record does not contain any indication that the three legal reasons laid out in article 42.07 as to why sentencing should not be pronounced are present. That is, there is no indication that the [a]ppellant has received a pardon, was incompetent to stand trial, or that he escaped custody following conviction and was subsequently rearrested.

Nevertheless, appellant asserts that he preserved error through the following exchange:

THE COURT:    All right.  Stand up, Mr. Lettsome.

. . .

THE COURT:    I'm going to find the punishment enhancement paragraph to be true.

Upon that, I'm going to sentence you, Mr. Lettsome, to 25 years confinement.

There will be an affirmative finding of a deadly weapon.  You will get credit for your back time. See the bailiff.

. . .

[Appellant]:    *Your Honor, can I say something?*

THE COURT:    Step in the back.

[Appellant]:    Thank you, Ms. Summers.

[Trial counsel]:    You're welcome, sir.

(Emphasis added.)

Neither appellant nor his trial counsel clearly conveyed to the trial court either a request that appellant be allowed to exercise his right of allocution or an objection that the trial court violated his right.  Simply, asking a trial court "can I say something?" is not sufficient to preserve error.  *See* TEX. R. APP. P. 33.1(a)(1)(A) (requiring objecting party to "state[] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint"); *Norton*, 434 S.W.3d at 771

17

(defendant's question, "[c]an I talk to you?" did not preserve error regarding trial court's denial of right of allocution).  Accordingly, we hold that appellant has not preserved this issue for appellate review.

**Conclusion**

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Sharp, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).

18