**Affirmed and Memorandum Opinion filed June 20, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00239-CR

---

**KEVIN WAYNE SAULS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 506th District Court
Grimes County, Texas
Trial Court Cause No. 18,039**

---

## MEMORANDUM OPINION

Appellant Kevin Wayne Sauls was convicted of two counts of aggravated robbery and two counts of aggravated kidnapping. In two issues on appeal, he contends that the evidence was legally insufficient to prove the aggravating element of one of the charged aggravated robberies and one of the charged aggravated kidnappings, i.e., that he used or exhibited a deadly weapon, namely a knife, in the course of committing those offenses. We affirm.

## *Background*

Appellant was charged with the aggravated robbery and aggravated kidnapping of Anita Walker and Naxdiely Gamez. All offenses allegedly occurred on March 27, 2016 and allegedly involved the use or exhibition of a knife as a deadly weapon. As stated, in this appeal, appellant only challenges the sufficiency of the evidence to support the finding that he used or exhibited a knife as a deadly weapon during the robbery and kidnapping of Walker.

Walker testified that on March 27, 2016, she was working at a Valero gas station when a man entered the store a little after midnight and asked her which pack of cigarettes was the cheapest.[1] She answered and the man told her to give him a pack. When she turned around with the cigarettes, the man was standing next to her. He said, "give me your money, bitch, or I'm going to kill you." Walker then opened the register and gave the man the money that was inside.[2] He also demanded ten packs of Newport cigarettes, which she handed over, and he told her to grab her car keys. She tried to take her car key off her key ring, but he told her that she was coming with him. She testified that she felt her life was in danger and she could not say no to him.

Before they walked outside, the man told Walker, "don't you scream or holler or try to run or I'll kill you." They walked to Walker's car and got in, and then Walker saw that the man had a knife. She said that she couldn't tell much about it but she saw the blade and it was silver. Before seeing the knife, Walker had thought the man had a gun. When asked why, she responded that she had been

---

[1] As will be discussed below, although neither Walker nor Gamez was able to identify appellant in court—perhaps due to changes in his appearance, such as the fact he was clean shaven during the trial—appellant's identity as the perpetrator was otherwise established and not contested at trial.

[2] Walker said that at the end of the night, she was $31 short for her shift.

unable to see his hand.

Around the same time, Walker saw a vehicle pull into the Valero parking lot. Walker "jumped out of the car and started running and screaming and hollering," with the man running after her, "hollering, 'I'm going to kill you, bitch.'" The car that had pulled into the parking lot promptly drove away, so Walker ran toward a gas delivery driver who had parked his truck near the gas station. The man who had been chasing her then ran away. Walker described the man as a black male with a beard and moustache, whom she said came in the store frequently. Video surveillance footage of the events was also played for the jury as was in-car video of a responding police officer who interviewed Walker on the night in question. In this latter video, Walker explained that she had been afraid to trigger the alarm pendant that she wore around her neck because she thought the man had a gun. She thought that he had a gun because he never took his hand out of his pocket until they got into Walker's car. The in-store surveillance video showed that the man kept his hand in his pocket for much of the time that he was in the store.

Gamez testified that on March 27, 2016, she was working at the West End Grocery Store when a man came in to use the restroom. She described the man as a black male with a beard and moustache and identified him in a photograph. The man exited the bathroom when the only other customer in the store left. The man walked toward the entry to the cash register area, and Gamez told him that he was not allowed back there. He then approached the cash register and pulled out a pocket knife. He threatened to stab her if she did not give him the money, so she gave him about $200. He then threatened to stab her if she did not give him her car keys.

Gamez handed the man her car keys, and he made her go outside to her car. Gamez said that at some point, as he was trying to get her into the passenger seat,

the man stabbed her in the leg. She said she didn't realize it at first but once she got into the car, she noticed she was bleeding. Photographs of the interior of Gamez's car admitted into evidence showed blood stains in several areas. Photographs and medical records were also admitted regarding Gamez's wound, and Gamez showed her scar to the jury.

Gamez said that the man drove around and eventually stopped and tried to "rape . . . and abuse" her. She was scared and told him she didn't want to do that. The man took off some of his clothes and made her take off some of her clothes and touch his genitals. The man then appeared to change his mind, and they drove around some more until they ran out of gas. The man then flagged down passing motorists to take him to a gas station, telling them that Gamez was his wife. He left Gamez with the car, and she subsequently was able to flag down someone to help her.

Two officers from the Navasota Police Department also testified. Officer Anthony Celano, Jr. stated that he had regular contact with appellant at the Valero gas station and was one of the officers who detained appellant not long after the offenses occurred. Celano positively identified appellant in the courtroom. Celano explained that when he interviewed Gamez, she was able to describe the knife used by the man who robbed and kidnapped her as having a wooden handle with brass ends and a silver blade about two inches long. Celano stated that a deadly weapon is anything that can cause serious bodily injury and that he had known a knife to cause serious bodily injury.

Investigator Adam Dodson testified that he found a pack of Newport cigarettes in Gamez's car. He said that appellant's sister turned appellant in and that appellant was the person who appeared in a still photograph taken from the surveillance video of the Valero robbery. Dodson further introduced a videotaped

4

interview of appellant that was taken shortly after his arrest. The video was then played for the jury. As Dodson states, appellant describes a knife in the video, but no knife was recovered by police. Dodson said that a knife can be used to cause serious bodily injury or death.

In the videotaped interview, appellant is generally cooperative with the officers but frequently speaks indistinctly. He appears to acknowledge robbing both stores and forcing both complainants to go with him to their cars. He also appears to acknowledge having a knife, that Walker saw the knife for the first time when they got in her car, and that Gamez was injured. Appellant even showed the officers the size of the knife's blade by indicating with his fingers. He stated that he had on the same clothes at both stores, although he also had a jacket at only one of the stores. The only charges appellant specifically denied in the interview were the ones concerning his alleged sexual assault of Gamez. He denied undressing or making her get in the backseat or touch his penis.

Two letters that appellant reportedly wrote from jail to prosecutors were also admitted into evidence.[3] In both letters, appellant admitted that he was guilty, and in one of the letters, he specifically admits that the charges against him were true. The point of the letters was not to profess innocence but to request leniency from the prosecutors. Appellant blamed his behavior on his cocaine addiction.

The jury found appellant guilty on all four counts. They additionally found two enhancement paragraphs to be true and assessed appellant's punishment at life in prison and a $10,000 fine on each of the four counts. The trial judge then imposed the sentences to run concurrently.

---

[3] Lieutenant Daniel Caswell, the administrator of the Grimes County jail, testified that the handwriting in the letters, and the signature on the only one that contained a signature, matched the handwriting and signatures on requests that appellant had submitted to Caswell.

In his first issue on appeal, appellant contends that the evidence was legally insufficient to support the finding that he used or exhibited a knife as a deadly weapon during the robbery of Walker. In his second issue, appellant contends that the evidence was legally insufficient to support the finding that he used or exhibited a knife as a deadly weapon during the kidnapping of Walker.

### *Governing Law*

In assessing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational trier of fact could have found the challenged element or elements of the crime beyond a reasonable doubt. *See Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In reviewing historical facts that support conflicting inferences, we presume that the jury resolved any conflicts in the State's favor and defer to that resolution. *Whatley*, 445 S.W.3d at 166. We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). As judge of the credibility of the witnesses, a jury may choose to believe all, some, or none of the testimony presented. *Cain v. State*, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997).

Circumstantial evidence is as probative as direct evidence and can be sufficient on its own to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "In circumstantial evidence cases, it is not necessary that every fact and circumstance 'point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.'" *Temple v. State*, 390 S.W.3d 341, 359-60 (Tex. Crim. App. 2013) (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.

Crim. App. 1993)).

The charges against appellant listed as the aggravating element that he used or exhibited a deadly weapon, namely a knife, in the course of committing the offenses. *See generally* Tex. Penal Code §§ 20.04(b) (aggravated kidnapping), 29.03(a) (aggravated robbery). The Texas Penal Code defines "deadly weapon" as: "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17). "Use" means the deadly weapon was employed, utilized, or applied in order to achieve its intended result, the commission of a felony. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). "Exhibited" means the weapon was consciously shown or displayed during the commission of the offense. *Id.* The essential requirement for a deadly-weapon finding is that there be some facilitation or furtherance between the weapon and the commission of the felony. *See Plummer v. State*, 410 S.W.3d 855, 865 (Tex. Crim. App. 2013). Any employment of a deadly weapon, even simple possession, can supply the basis for a deadly-weapon finding if the possession facilitates the felony. *See id.* at 859; *Patterson*, 769 S.W.2d at 941.[4]

A knife can be found to be a deadly weapon based on the nature of its use or intended use. *E.g., Garcia v. State*, 17 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). It is for the jury to determine whether an individual used a knife as a deadly weapon by weighing the evidence before it on a case-by-case basis and using that evidence to draw reasonable inferences. *Isassi v. State*, 330 S.W.3d 633,

---

[4] Although *Plummer* and *Patterson* both concerned the sentencing implications that result from a deadly weapon finding, their analysis is also applicable when a deadly weapon finding is used as an aggravating element for an offense. *See, e.g., Safian v. State*, 543 S.W.3d 216, 222-24 (Tex. Crim. App. 2018); *McCain v. State*, 22 S.W.3d 497, 500, 502 (Tex. Crim. App. 2000).

638 (Tex. Crim. App. 2010). Some factors that can be considered in determining whether a particular knife qualifies as a deadly weapon are (1) the size, shape, and sharpness of the knife; (2) the manner in which appellant used the weapon; (3) the nature of any inflicted wounds; (4) any testimony concerning the knife's life-threatening capabilities; and (5) appellant's statements. *Banargent v. State*, 228 S.W.3d 393, 398 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *see also Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986) (listing as relevant factors defendant's express and implied threats, distance between defendant and victim, and victim's description of knife).

Objects used to threaten deadly force are deadly weapons, even if the actor has no intention of actually using deadly force. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Evidence is sufficient if a knife is displayed in a manner conveying an express or implied threat that serious bodily injury or death will be inflicted if the desire of the person displaying the knife is not satisfied. *Billey v. State*, 895 S.W.2d 417, 422 (Tex. App.—Amarillo 1995, pet. ref'd); *see also Boston v. State*, No. 14-01-01133-CR, 2002 WL 31425874, at *4 (Tex. App.—Houston [14th Dist.] Oct. 10, 2002, no pet.) (not designated for publication) (quoting *Billey*). By producing the knife and exhibiting its blade, even if only in part, a defendant can achieve his desired effect of placing a person in fear of death or serious bodily injury. *Billey*, 895 S.W.2d at 422–23.

### *Aggravated Kidnapping*

We begin with appellant's second issue, in which he challenges the sufficiency of the evidence to support the jury's finding that he used or exhibited a deadly weapon, namely a knife, in kidnapping Walker.[5] Among other possibilities,

---

[5] As stated above, appellant does not contest that the evidence supports the findings that he robbed and kidnapped Walker.

a person commits aggravated kidnapping "if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense." Tex. Penal Code § 20.04(b). Walker testified that before they left the store, appellant told her several times that he was going to kill her if she did not comply with his demands. Appellant had kept his hand in his pocket while he made the demands and threats, leading Walker to conclude that appellant had a weapon in his pocket. Appellant then made Walker retrieve her car key, go to her car, and get inside, while warning her that he would kill her if she screamed or tried to run. He also told her that she was coming with him.

Once they were in the vehicle, Walker saw appellant holding a knife. Appellant generally confirmed this account in his videotaped interview with police and, indeed, appeared to chuckle when recounting Walker's reaction to seeing the knife. He also wrote letters to prosecutors admitting his guilt and acknowledging that the charges against him were true. Those charges, of course, included the allegation that appellant kidnapped Walker while using or exhibiting a knife as a deadly weapon. Based on this evidence, it was reasonable for the jury to conclude that appellant exhibited the knife while abducting Walker and used the knife to ensure Walker's compliance with his commands. *See Plummer*, 410 S.W.3d at 865; *Patterson*, 769 S.W.2d at 941. Although Walker ran screaming from the car after seeing the knife and seeing another vehicle pull into the parking lot, this does not erode the reasonableness of the conclusion that appellant was using and exhibiting the knife during the commission of the offense. Indeed, appellant ran after Walker when she exited the vehicle, again yelling that he was going to kill her.

Appellant additionally challenges whether the evidence supported the conclusion that the knife appellant possessed was a deadly weapon. Walker

testified that she was scared for her life. As mentioned, appellant himself recounted Walker's shocked reaction to seeing the knife. When she saw the knife, Walker and appellant were in close proximity as they were sitting in the front seats of her car. Appellant also threatened to kill Walker several times. *See Brown*, 716 S.W.2d at 946; *Billey*, 895 S.W.2d at 422; *see also Voss v. State*, No. 01-08-00249-CR, 2009 WL 1635208, at *3–4 (Tex. App.—Houston [1st Dist.] June 11, 2009, no pet.) (mem. op., not designated for publication) (citing evidence of threats, fear of the victims, and proximity in holding evidence was sufficient to support finding that knife was used as a deadly weapon).

It was further reasonable for the jury to conclude that the knife appellant showed Walker was the same knife he exhibited and used in the robbery and kidnapping of Gamez on the same day. Appellant appeared to acknowledge this in his videotaped interview with police. He also indicated the size of the knife blade during the interview and acknowledged he was wearing the same clothes when he robbed and kidnapped Walker as when he robbed and kidnapped Gamez. Gamez described the knife to a police officer who relayed the description at trial.

Gamez also testified that appellant stabbed her in the leg with the knife. The jury heard this testimony and saw photographs of blood in Gamez's car and of Gamez's wound. The jury further saw Gamez's medical records from when she was treated at the hospital, and Gamez showed the jury her scar. *See Tucker v. State*, 274 S.W.3d 688, 691–92 (Tex. Crim. App. 2008) (explaining that a victim's injuries can by themselves be a sufficient basis for concluding that a deadly weapon was used). Additionally, two police officers testified that in their experience, a knife could cause serious bodily injury. *See, e.g., Kirby v. State*, No. 13-09-00408-CR, 2010 WL 3420593, at *5 (Tex. App.—Corpus Christi Aug. 31, 2010, no pet.) (mem. op., not designated for publication) (noting officers testified

10

that a knife can cause serious bodily injury in holding evidence was sufficient to support finding that knife was used as a deadly weapon).[6] Based on this evidence, the jury was reasonable in concluding that appellant used or exhibited a deadly weapon, namely a knife, in kidnapping Walker. *See, e.g., Clark v. State*, 444 S.W.3d 671, 678 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding evidence was sufficient to support finding that pocketknife was a deadly weapon); *Hatchett v. State*, 930 S.W.2d 844, 848–49 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (same). Accordingly, we overrule appellant's second issue.

### *Aggravated Robbery*

The jury could also have reasonably concluded that appellant used or exhibited a knife as a deadly weapon during the course of robbing Walker. Based on the evidence that appellant made Walker get her car key, go to the car with him, and get in, while saying that she was coming with him, the jury could have reasonably concluded that appellant was then robbing Walker of her car.[7] The use and exhibition of the knife once in the car could then provide the aggravating element to raise the offense to aggravated robbery, just as it did for the aggravated kidnapping offense discussed above. *See, e.g., Steptoe v. State*, No. 14-10-00131-CR, 2011 WL 61854, at *3 (Tex. App.—Houston [14th Dist.] Jan. 6, 2011, pet

---

[6] We note that the officers' testimony in this case was generalized regarding knives as deadly weapons and not specific to the knife used in these offenses. The testimony was therefore significantly less probative than if the officers had testified regarding the specific knife.

[7] In his discussion of the robbery of Walker in his brief, appellant only mentioned the taking of money and cigarettes from the Valero and did not address the evidence indicating appellant robbed Walker of her car. A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, the person (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code § 29.02(a). "Property" in this context includes "tangible personal property." *Id*. § 29.01(2)(A). Neither the indictment nor the jury charge specified the property that appellant allegedly stole from Walker. The jury could have reasonably concluded based on the evidence that appellant robbed Walker of the money, the cigarettes, and her car.

ref'd) (mem. op., not designated for publication) (holding evidence was sufficient to support aggravated kidnapping and aggravated robbery convictions where defendant used gun in attempting to abduct victim in her own vehicle). The analysis concerning whether the knife was a deadly weapon in regards to the aggravated robbery would also be the same as discussed above concerning the aggravated kidnapping. Accordingly, we overrule appellant's first issue.

We affirm the trial court's judgment.


/s/    Frances Bourliot
Justice


Panel consists of Justices Christopher, Bourliot, and Spain.

Do not publish—Tex. R. App. P. 47.2(b).